LAW OFFICES OF

# DAVID J. SUTTON, P.C.

1205 FRANKLIN AVENUE • SUITE 320
GARDEN CITY, NEW YORK 11530
Telephone (516) 294-8797 • Facsimile (516) 294-2758
E-Mail: david@dsuttonlaw.com

David J. Sutton

*Of Counsel*
Larry J. Bonchonsky
Daniel J. Osojnak
Anthony N. Elia
Gregory A. Curry
Brian C. Pascale

RECEIVED MAY 12 2010 CHAMBERS OF LAURA TAYLOR SWAIN U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 14 MAY 2010

May 10, 2010

Hon. Laura Taylor Swain
United States District Judge
United States Courthouse
Courtroom: 11C
500 Pearl Street
New York, NY 10007-1312

Re:   **United States of America v. Matthew D. Weitzman**
      **Index No.: 1:09-Cr.-00989 (LTS)**

Dear Judge Swain:

Please accept this letter in connection with the upcoming May 27, 2010 sentencing of Matthew Weitzman. This firm represents Jocelyn Keil, a 71-year-old retired public school librarian who lives in a one bedroom rental apartment in Mineola, New York. Mr. Weitzman and the firm of AFW embezzled over $400,000.00 from Ms. Keil from 2005 to 2006.[1] We have had the opportunity to review the Defendant's sentencing Memorandum, the letter of Assistant U.S. Attorney Joan Loughnane which bears a date of February 8, 2010 but is referred to as an April 15, 2010 letter, the letter of attorneys for Mr. Weitzman's father-in-law, Dr. Burton Langer, of April 21, 2010 and the April 1, 2010 letter of the attorneys for Charles Schwab.

Pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA") (18 U.S.C. §§ 3663A - 3664), this Court is to determine who were the true victims of Matthew

---

[1] Jocelyn Keil has instituted proceedings against Matthew Weitzman, AFW and its other principal Jay W. Furst in Nassau County Supreme Court under index number 10413/09. The motions of AFW and Mr. Furst to dismiss the complaint were recently denied by Nassau County Supreme Court Justice R. Bruce Cozzens  Justice Cozzens has also declared Mr. Weitzman in default, and an inquest against Mr. Weitzman has been ordered to be conducted.

The Law Offices of David J. Sutton, P.C.
May 10, 2010
Page -2-

Weitzman's crimes and precisely how much restitution each victim is entitled to. The MVRA "directs that *before* making an order of restitution, the district court should review, to the 'extent practicable, a complete accounting of the losses.' 18 U.S.C. §3664(a)." *U.S. v. Reano*, 298 F.3d 1208, 1210 (10th Cir. 2002) (emphasis in original). Courts can conduct hearings into these issues:

> This provision permits a court hearing a criminal matter to conduct a quasi-civil investigation into the wrongs committed against each identified victim and to fix the monetary compensation required to make the victim whole.

*U.S. v. Hollman Cheung*, 952 F.Supp. 148, 150 (E.D.N.Y. 1997) (interpreting the related Victim and Witness Protection Act, 18 U.S.C. § 3663).

Furthermore, § 3664(d)(5) contemplates a restitution hearing to be held within 90 days of the sentencing date if the amount of restitution cannot be determined at the time of sentencing (specifically, not later than 10 days before sentencing). 18 U.S.C. § 3664(d)(5). *See, also, U.S. v. Zakhary*, 357 F.3d 186, 190 (2d Cir. 2004); *U.S. v. Vandeberg*, 201 F.3d 805, 813 (6th Cir. 2000) ("it is no doubt true that in many cases, a sentencing court will want to conduct a hearing to obtain relevant evidence and afford the parties an opportunity to present oral argument" to determine the amount of restitution). Here, of course, the sentencing date has not occurred and is currently set for May 27, 2010. Section 3664(d)(6) states that the district court may refer such issues to a magistrate judge or special master "for proposed findings of fact and recommendations as to disposition."

As part of its analysis into restitution a court is also to look into all available and relevant assets, including those assets "jointly controlled":

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of —
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled...

18 U.S.C. § 3664(f)(2).

The Law Offices of David J. Sutton, P.C.
May 10, 2010
Page -3-

It is first noted that there seems to be a material discrepancy in the amount of the loss. For example, the US Attorneys' office claims that Mr. Weitzman's thefts involve only $7 million dollars. Dr. Langer's attorneys claim that Dr. Langer alone is the victim of a theft of approximately $8.4 million dollars. We respectfully submit that the full extent of the thefts occasioned by Mr. Weitzman at AFW need to be more precisely calculated before the sentencing guidelines can be applied to Mr. Weitzman's sentence and an appropriate restitution order can be entered.

We also question the amount that has been placed in a fund for restitution. It appears that Defendant has only deposited with the court the approximate sum of $1,531,722.00 which represents the net proceeds from the sale of his home and $90,000.00 from Fairview Country Club.

Mrs. Weitzman is a graduate of New York Law School, and the Weitzmans presumably filed joint federal and state tax returns which required Mrs. Weitzman's signature. Defendant's sentencing memorandum, however, makes repeated references to **Mrs. Weitzman's** demands for a lifestyle well in excess of the Weitzmans' reported income. On page 8 of defense counsel's sentencing memorandum, it is conceded that Mrs. Weitzman would argue with Matthew and demand that she be provided a lifestyle far in excess of what Mr. Weitzman could afford. Mrs. Weitzman would know the full extent of the income earned by Mr. Weitzman and would have had reasonable grounds to question the lavish lifestyle that she demanded. For example, on page 18 defense counsel admits that the pressure from Mrs. Weitzman was so great on Mr. Weitzman that his response was to embezzle money from trusting clients like Jocelyn Keil. On page 19 there is reference to Mr. Weitzman's desire to provide an ideal lifestyle for Mrs. Weitzman. He could only do this by taking his clients money. Thus, Mrs. Weitzman's unreasonable demands for all things material forced her husband to take over $400,000.00 from a 71-year-old retiree living in a one-bedroom rental apartment.

We question the paltry restitution sum of $1.5 million when so much money has apparently been taken from AFW clients. For example, since the demands for a lavish lifestyle came solely from Mrs. Weitzman, we question why such typical valuables as clothing, furs and jewelry purchased for Mrs. Weitzman have not been forfeited since admittedly the embezzled money was used to purchase luxuries for Mrs. Weitzman. As defense counsel admits on page 18, "the pressure was too great for Matt, and regrettably, in response he misappropriated assets in a misguided effort to maintain domestic tranquility." The lack of domestic tranquility came from Mrs. Weitzman and her insatiable demands for material things.

We submit that there is reason to believe that Mrs. Weitzman is still in possession of those valuables purchased with the life savings of victims like Jocelyn Keil.

We also note that in the April 23, 2010 letter of Dr. Langer's attorney, it is claimed that Dr. Langer and his accountants could not read simple account statements from Charles Schwab. In contrast, Jocelyn Keil reviewed her Charles Schwab statements and promptly noted that money had been transferred out of her Schwab account. She immediately questioned Matthew Weitzman about these withdrawals. She was assured by Mr. Weitzman that the money had been invested in certificates of deposit yielding greater returns than would be received in the Charles Schwab account. AFW prepared phony monthly account statements for Ms. Keil where these non-existent investments appeared.

We respectfully submit that Dr. Langer's claim that he and his accountants could not read or comprehend simple account statements showing over $8.4 million dollars of withdrawals is simply not credible. Furthermore, according to Charles Schwab, Dr. Langer received the courtesy of a telephone call directly from Schwab's fraud investigators. Dr. Langer assured these fraud investigators that nothing was amiss in his Schwab accounts. We believe that Charles Schwab has documentation confirming these conversations with Dr. Langer, and we submit that Charles Schwab should be compelled to produce contemporaneous memos outlining these conversations with Dr. Langer. Dr. Langer's counsel simply claims that Dr. Langer does not recall those critical conversations with Charles Schwab.

Dr. Langer also claims that a purported $1.3 million dollar loan in 2005 to Mr. Weitzman was purposely concealed from his daughter. In order to believe Dr. Langer's account we must believe that Mr. Weitzman first told his father-in-law not to inform his own daughter that his daughter's husband needed a loan of $1.3 million to make home renovations. We must also believe that Mrs. Weitzman would not be curious to know how the Weitzman family could afford a $1.3 million dollar home renovation without having to either borrow money or obtain the money by other means. Moreover, in order to give any credence to Dr. Langer's story one would have to further believe that, notwithstanding Mr. Weitzman's attempt to keep this loan secret from his wife, Dr. Langer would not have had a private conversation with his daughter about Matthew's desperate need to borrow money.

We bring these matters to the Court's attention prior to sentencing because we believe that the large discrepancy in the alleged amounts embezzled by Mr. Weitzman bears directly upon his sentence. We also believe that Dr. Langer's claims that he is entitled to part of the restitution fund notwithstanding the fact he was put on notice by Charles Schwab that money was being inappropriately withdrawn from his accounts by

The Law Offices of David J. Sutton, P.C.
May 10, 2010
Page -5-

his son-in-law will have a direct impact on whether innocent victims such as Jocelyn Keil will ever see the full return of her life savings.

Lastly, we believe that the deposit of only $1.5 million in a restitution fund without any explanation for the purchase of luxuries for Mrs. Weitzman should be addressed by the Court before Mr. Weitzman is sentenced.

Thank you for your courtesy and attention to this matter.

Respectfully yours,

David J. Sutton

*Via Facsimile 212-637-2937*
Cc: Joan M. Loughnane
Assistant U.S. Attorney
Southern District of New York
U.S. Department of Justice
The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, NY 10007

*Via Facsimile 516-747-0653*
Joshua A. Berman, Esq.
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue
Mineola, NY 11501

*Via Facsimile 212-938-3833*
Marc L. Mukasey, Esq.
Bracewell & Giuliani LLP
1251 Avenue of the Americas
New York, NY 10020

The Law Offices of David J. Sutton, P.C.
May 10, 2010
Page -6-

*Via Facsimile 973-514-1660*
Frank J. Cuccio, Esq.
Bressler, Amery & Ross
325 Columbia Turnpike
Florham Park, NJ 07932

Nicole Guite, Probation Officer
Daniel Patrick Moynihan U.S. Courthouse
U.S. Probation Office
500 Pearl Street
New York, NY 10007-1312